IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RHONDA STELLY, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. _____ |
| WEST GULF MARITIME | § | |
| ASSOCIATION and | § | |
| INTERNATIONAL LONGSHOREMEN'S | § | |
| ASSOCIATION - # 1316, | § | |
|     *Defendants.* | § | JURY TRIAL DEMAND |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**A. NATURE OF ACTION**

This is an employment discrimination and retaliation action, arising under the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq ("Title VII").

**B. PARTIES**

1. Plaintiff, RHONDA STELLY, is an individual who is a citizen of the State of Texas.

2. Defendant, WEST GULF MARITIME ASSOCIATION ("WGMA"), is a domestic nonprofit organization existing under the laws of the State of Texas, whose principal office is located at 1717 Turning Basin Dr., Suite 200, Houston, Texas and may be served with process by serving its registered agent, Nathan A. Wesely at 1717 Turning Basin Dr., Suite 200, Houston, Texas, 77029.

3. Defendant, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION ("ILA")- # 1316, is a labor union association that can be served through its president, Joe Egland, Jr., or another person authorized to accept service, at 590 Royal Street, Beaumont, Texas 77701.

## C. JURISDICTION

4. This Court has subject-matter jurisdiction of the claims asserted in this complaint under 28 U.S.C. §1331 and 42 U.S.C. § 2000e-5(f)(3).

## D. VENUE

5. Venue of this action is proper in this federal court pursuant to 28 U.S.C. §1391(b), (c) and 42 U.S.C. §2000e-5(f)(3) since the court is located in the judicial district where employer has its principal office.

## E. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed charges of sex discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after receiving the respective notices of the right to sue.

## F. FACTS

7. Plaintiff is a 47-year old female, who began her employment with Defendant WGMA and became affiliated with Defendant ILA about January 2014 as a longshoreman. Defendant WGMA employs skilled longshoremen workers furnished by Defendant ILA's hiring hall.

8. Since then, Plaintiff had been subjected to unwelcome sexual harassment by Paul Duriso, who was a board member and worked as foreman for Defendant ILA, Donald Haggerty, who was a longshoreman, and other members of Defendant ILA.

9. Plaintiff has also endured retaliation and a hostile work environment since Plaintiff refused to submit to her harassers' requests for sexual favors. The hostile work environment intensified after Plaintiff filed a complaint with the ILA board against Paul Duriso and Donald Haggerty.

10. Sexual harassment is a widespread problem at Defendant ILA and the unwanted sexual advances toward Plaintiff began on Plaintiff's first days of work, when Mr. Duriso approached Plaintiff and stated that he could help her get jobs at the hiring hall if Plaintiff would let him be her "sugar daddy". Mr. Duriso also stated that if Plaintiff wanted to be accepted at the hiring hall she would have to learn how to "play ball" like the other women. When Plaintiff questioned Mr. Duriso about what he meant, he replied that "play ball" meant submitting to sexual favors asked by the male superiors, himself included, and other male longshoremen. Mr. Duriso added that if Plaintiff refused, he would make sure that Plaintiff would be prevented from getting any jobs at the hiring hall. Moreover, Mr. Duriso also used offensive, sexually charged language towards Plaintiff.

11. Plaintiff had also been sexually harassed by Donald Haggerty beginning in February 2014. Mr. Haggerty's unwanted sexual advances included using offensive language of sexual nature, calling them "lovers" and telling Plaintiff's sons, who also were longshoremen, that he was their step-father. Plaintiff protested his behavior to him and to Defendants.

12. After Plaintiff filed complaints concerning the unwanted behavior and the sexual harassment hostile work environment with Defendant ILA, Mr. Duriso retaliated

against Plaintiff, trying to bar Plaintiff from being selected for jobs at the hiring hall. Mr. Duriso also screamed, threatened and humiliated Plaintiff at the hiring hall. Mr. Haggerty and other longshoremen became verbally abusive and threatening toward Plaintiff after they learned of the charges.

13. Despite the complaints Plaintiff filed against Paul Duriso and Donald Haggerty, Defendant ILA did nothing to stop the behavior, the hostile work environment and retaliation. In or around April 2015, Plaintiff filed another written complaint for sexual harassment to Defendant WGMA.

14. Mr. Duriso was temporarily suspended from about April 2015 through August 2015 while Defendant WGMA conducted an investigation on the complaints filed by Plaintiff. However, Mr. Duriso kept coming to the hiring hall and creating a hostile work environment and retaliating against Plaintiff. One occasion, Mr. Duriso unsuccessfully demanded the hiring hall foreman to not hire Plaintiff. The hostile work environment was so severe and pervasive that Plaintiff felt that she could not come to the hiring hall for the whole month of July 2015 and August 2015.

15. Even after Mr. Duriso and Mr. Haggerty were permanently suspended from coming to the hiring hall, which happened in or around August 2015, Mr. Duriso managed to be at the hiring hall retaliating and creating a hostile work environment against Plaintiff. Plaintiff notified Defendant WGMA by e-mail in October 2015 that Mr. Duriso was coming to the hiring hall.

16. Plaintiff suffered retaliation and a hostile work environment caused by other longshoremen because of the complaints she filed against Mr. Duriso and Mr. Haggerty. On January 26, 2016, Plaintiff was taken out of work for 4 hours for no reason by Pam Smith, a close friend of Mr. Duriso. In another occasion, on January 28, 2016, Plaintiff was covering for another worker who left the job and the foreman, Ronnie Mickles, made Plaintiff work by herself in a job assignment with "pulp cars" that required more than one person to perform.

17. The hostile work environment was severe and pervasive. Kimberly Wiley, a longshoreman, would say that she "would bust someone in her mouth" referring to Plaintiff. James Eli, longshoreman and former union president, told Plaintiff she was causing problems to the men and their money. He commented during union meetings that Plaintiff should not be allowed to work there since Paul Duriso and Donald Haggerty couldn't come back to work. He also said that Plaintiff was a problem and if Plaintiff wanted to work in a man's industry she should learn how to deal with all that comes with it.

18. Around January 2016, a threatening letter directed at Plaintiff was taped on the walls and in the bathrooms of the hiring hall for anyone to see.

19. In March 2016, Plaintiff filed charges of sex discrimination and retaliation with the EEOC against Defendants.

### G. COUNT 1 – DISCRIMINATION ON THE BASIS OF SEX

20. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely a member of the female sex.

21. Defendant WGMA is an employer within the meaning of Title VII and Defendant ILA is a labor organization, also covered by the provisions of Title VII, which protect workers against unlawful employment practices, such as discrimination based on sex.

22. Defendants intentionally discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended (including but not limited to the Lilly Ledbetter Amendment) based on Plaintiff's sex.

23. Defendants intentionally discriminated against Plaintiff because of her sex in violation of Title VII by subjecting her to different standards than her male counterparts.

24. Defendants' conduct violates Title VII.

25. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### **H. COUNT 2 - RETALIATION**

26. Plaintiff was retaliated against for complaining against unlawful workplace harassment. She was subjected to adverse employment actions that would likely dissuade an employee from complaining or supporting a complaint about discrimination. Plaintiff was taken out of a job for 4 hours for no reason by a longshoreman, a close friend to Mr. Duriso.  She was also assigned to work alone in a job that required more than one person to perform by another close friend of Mr. Duriso.   Mr. Duriso unsuccessfully tried to keep Plaintiff out of a job

6

at the hiring hall after he knew of the charges Plaintiff had filed against him. Plaintiff felt compelled to not go to the hiring hall for two months because of the vicious behavior of Mr. Duriso.

## I. DAMAGES

27. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

    - Plaintiff lost back pay and benefits and front pay and benefits;
    - Plaintiff suffered mental anguish, emotional distress, humiliation and embarassment among co-workers, damages to her prospects for employment, and loss of enjoyment of life;
    - Plaintiff seeks punitive damages; and
    - Plaintiff is entitled to prejudgment interest on lost wages and benefits and postjudgment interest on all sums, including attorney's fees.

## J. ATTORNEY'S FEES

28. Plaintiff is entitled to recover reasonable and necessary attorney's fees under the Title VII, 42 U.S.C. §2000e-5(k) for claims against Defendants.

## K. DEMAND FOR JURY

29. Plaintiff requests a jury trial.

## L. PRAYER

30. For these reasons, Plaintiff asks that Defendants be cited to appear and answer and, on final trial, that Plaintiff have judgment against Defendants and the Court order relief that includes the following:

    1. Declare Defendants' conduct to be in violation of Plaintiff's rights;

2. Enjoin the Defendants from engaging in such conduct;

3. Award Plaintiff front pay and the value of lost benefits for the period remaining until her normal retirement age;

4. Award Plaintiff back pay and the value of lost benefits up to the date of front pay accrual;

5. Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

6. Award Plaintiff punitive damages;

7. Award Plaintiff special and nominal damages for injuries caused by Defendants' conduct;

8. Order Defendants to pay Plaintiff's costs and attorney's fees; and

9. Order and grant other relief as is proper and just.

Respectfully submitted,

**LAW OFFICES OF KEITH LOVELACE**
8303 Southwest Freeway, Suite 975
Houston, Texas 77074-1622

By: /s/ Keith Lovelace
      Keith Lovelace
SDTBN. 19678
SBN 12600700
Telephone: 713/777-0500
Facsimile:   713/995-5555
**ATTORNEY FOR PLAINTIFF,
RHONDA STELLY**